[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action for attorney's fees has been tried to the Court together with a counterclaim alleging wrongful receipt of money. For the reasons set forth below, judgment must enter for the plaintiff on both the complaint and the counterclaim.
The plaintiff — Goldblatt, Greenstein Rashba, P.C. ("Goldblatt") — is a law firm. This case arises out of Goldblatt's representation of Mary Jane Child ("Child") in a family law matter. Childv. Child, No. 299917 (N.H.J.D.). Child died on February 2, 1997, after the conclusion of the family case: The defendant, Vicki Ann Ambro ("Ambro"), is the executrix of her estate. The evidence, including several court files which have been judicially noticed, establishes the following facts.
In 1990, Child's husband, Patrick Child, sued her for divorce. Childv. Child, supra. On June 6, 1990, Goldblatt filed his appearance for Child. Child and Goldblatt had an oral contract in which Child agreed to pay Goldblatt for his services. The oral contract did not specify a payment date. On April 15, 1992, Child paid Goldblatt $1,230.06 in partial payment of her debt to him on this contract. No other payment was made to Goldblatt during Child's lifetime. CT Page 1320
The prayer for relief in Child v. Child was subsequently amended to seek a legal separation. On September 4, 1992, the parties filed a Separation Agreement. Under paragraph 7 of that Agreement, each of the parties was to be responsible for their own financial obligations. Paragraph 7 further provided that:
 The husband shall keep and retain all of his interest in and to all savings and retirement plans of which he is a beneficiary through his employment excepting however to the extent of $10,000.00 which shall be transferred to the wife's account by way of a Qualified Domestic Relations Order. The said funds shall be deposited with Attorney Richard Goldblatt in trust to be disbursed by him consistent with the provisions of this agreement and particularly paragraph 7.
On August 1, 1994, a Qualified Domestic Relations Order was signed by Axelrod, J. On September 27, 1995, a second Qualified Domestic Relations Order was signed, also by Axelrod, J.
On May 13, 1996, Goldblatt sent Child an "Interim Statement," stating a balance due of $9,017.94. On May 16, 1996, Goldblatt commenced an action for attorney's fees against Child in the New Haven Superior Court.Goldblatt, Greenstein Rashba, P.C. v. Child, No. 387072 (N.H.J.D.). Attorney Douglas Daniels ("Daniels") appeared for Child in that action.
On October 11, 1996, Patrick Child's employer sent Child a check in the amount of $9,217.18. This sum was a partial (and, apparently, the only) payment of the $10,000 to be transferred to Child's account by way of a Qualified Domestic Relations Order pursuant to paragraph 7 of the Separation Agreement. Under the agreement, Child was obliged to deposit this amount with Goldblatt to be disbursed by him. She instead deposited it with Daniels.
Child died on February 2, 1997. On February 28, 1997, Ambro filed an application for administration of Child's will in the Wallingford Probate Court. On May 2, 1997, Goldblatt sent an Affidavit and Proof of Claim to both Ambro and the Probate Court. The Affidavit claimed that Child was indebted to Goldblatt in the amount of $9,017.94.
On June 20, 1997, the Superior Court dismissed the case of Goldblatt,Greenstein Rashba, P.C. v. Child, supra, for failure to prosecute.
On October 17, 1997, Daniels paid Goldblatt $5,000 out of the $9,217.18 CT Page 1321 deposited with him by Child. He did so after discussions with Goldblatt and the attorney for Patrick Child (which latter attorney apparently received the rest of the amount in question) but without any authorization from the Wallingford Probate Court. Goldblatt credited the sum he received to Child's outstanding bill.
On February 27, 1998, Goldblatt commenced the present action by service of process.
On April 9, 1998, Ambro filed a return of claims in the Wallingford Probate Court. The return lists Goldblatt's claim and states that "0.00" of that claim is allowed. On September 9, 1998, Ambro's attorney wrote a letter to the Probate Court setting forth a list of creditors, including Goldblatt, and stating that "I have written to [these] creditors, seeking substantiation of their respective claims." (No such letter directed to Goldblatt appears in the record.)
On June 15, 1999, Ambro filed a revised return of claims. With respect to Goldblatt's claim, the revised return states, "Atty. Daniels paid $5,000.00/$4,017.94 Denied." The revised return provides no date of written disallowance. No copy of a written disallowance has been submitted in evidence in the present case by either party.
Goldblatt's complaint consists of a single count alleging Child's nonpayment on a contract for legal services. Goldblatt claims that Child's estate owes him $4,017.94.
Ambro has filed two special defenses and a counterclaim. Her first special defense is that the claim is barred by two different statutes of limitation, Conn. Gen. Stat. §§ 45a-363 52-581. Her second special defense is that Goldblatt "had no written fee agreement with the Decedent and is therefore precluded from recovering a fee for legal services from her estate." At argument, Ambro expressly abandoned that portion of her first special defense relying on Conn. Gen. Stat. § 52-581. She additionally abandoned her second special defense in its entirety. She continues to claim that portion of her first special defense relying on Conn. Gen. Stat. § 45a-363. Her counterclaim focuses on the $5,000 paid to Goldblatt by Daniels. It claims that, "The money held by Attorney Daniels should have been turned over to the Defendant for accounting with the Probate Court."
The case was tried to the Court on December 1, 2000. Following the submission of posttrial briefs, it was argued on January 22, 2001.
Given the facts established by the evidence, the issues presented by the pleadings will now be examined in turn. CT Page 1322
Goldblatt has established his case-in-chief. He and Child had an oral contract for the provision of legal services in connection with the case of Child v. Child, supra. His total bill is for the amount of $10,380, less an "adjustment" of $132; Child's partial payment, mentioned above, of $1,230.06; and Daniel's payment of $5,000. The balance due is $4,017.94. Goldblatt's bill is supported by hourly time records. There is evidence that Child was dissatisfied with the bill toward the end of her life, but no persuasive reasons for her dissatisfaction appear in the evidence. The file of Child v. Child indicates that this was a contentious affair. Based on the evidence here, Goldblatt's bill is found to be reasonable.
Ambro's remaining special defense must now be considered. She contends that Goldblatt's claim is barred by Conn. Gen. Stat. §§ 45a-363.
Conn. Gen. Stat. § 45a-363 provides, in relevant part, that:
 Suit against estate on rejected claim; time within which to commence suit or file application. (a) No person who has presented a claim shall be entitled to commence suit unless and until such claim has been rejected, in whole or in part, as provided in section 45a-360.
 (b) Unless a person whose claim has been rejected (1) commences suit within one hundred twenty days from the date of the rejection of his claim, in whole or in part, or (2) files a timely application pursuant to section 45a-364, he shall be barred from asserting or recovering on such claim from the fiduciary, the estate of the decedent or any creditor or beneficiary of the estate, except for such part as has not been rejected.
Sec. 45a-363 (a) refers to § 45a-360. Sec. 45a-360
provides that:
 Allowance or rejection of claims. (a) The fiduciary shall: (1) Give notice. to a person presenting a claim of the rejection of all or any part of his claim, (2) give notice to any such claimant of the allowance of his claim, or (3) pay the claim.
 (b) A notice rejecting a claim in whole or in part shall state the reasons therefor, but such statement CT Page 1323 shall not bar the raising of additional defenses to such claim subsequently.
 (c) If the fiduciary fails to reject, allow or pay the claim within ninety days from the date that it was presented to the fiduciary as provided by section 45a-358, the claimant may give notice to the fiduciary to act upon the claim as provided by subsection (a) of this section. If the fiduciary fails to reject, allow or pay the claim within thirty days from the date of such notice, the claim shall be deemed to have been rejected on the expiration of such thirty-day period.
Ambro argues that, because she never gave notice rejecting Goldblatt's claim pursuant to § 45a-360(a)(1) and because Goldblatt never gave notice to her pursuant to § 45a-360(c), Goldblatt's claim is now banned by the one hundred twenty day statute of limitations set forth in § 45a-363(b)(1). This argument is unpersuasive on the facts presented here for two different reasons.
First, § 45a-363 is a statute of limitation rather than a jurisdictional prerequisite. Northeast Savings, F.A. v. Milazzo,44 Conn. Sup. 477, 480-81, 691 A.2d 603 (Super.Ct. 1996). Ambro's special defense squarely asserts it as such. It is exceedingly difficult to see how a statute of limitation can be said to have run when, according to the party asserting it, the event triggering the running of that statute — here the formal "rejection" of the claim — has not yet occurred. By this analysis, the statute of limitation, far from having expired, has not even begun to run. Ambro shares a good deal of the blame for this, since it is her own inaction upon which she principally relies. The Supreme Court long ago explained, with reference to an ancestor of the statute now in question, that:
 The defendant . . . had the power, at any time [s]he chose, to bring the plaintiff's claim within the operation of this statute. But there was only one way for h[er] to do it, and that was, not by remaining silent and omitting to promise payment of the claim or even by unreasonably delaying payment — for from neither of those circumstances could a refusal to pay be implied — but by disallowing and refusing to pay the claim, and giving notice to the plaintiff of such disallowance in terms so unequivocal that he might know with certainty when his claim if not sued would be barred. Nothing short of this would have satisfied the requirements of the statute. CT Page 1324
Bradley v. Vail, 48 Conn. 375, 385 (1880). Insofar as Ambro's claim that no "rejection" has occurred is correct, her argument that the statute of limitations has run fails on its own terms.
There is a different way to look at § 45a-363, and this brings us to the second problem with Ambro's argument. The "rejection" requirement can be viewed not just as the commencement of a limitations period but as a condition precedent. If Ambro had argued at some point between the commencement of this action (on February 27, 1998) and the filing of her revised return of claims (on June 15, 1999) that the condition precedent had not occurred, her argument might have been a forceful one. SeeWilburn v. Mount Sinai Medical Center, 3 Conn. App. 284, 288, 487 A.2d 568
(1985). But her revised return of claims expressly states that Goldblatt's claim is "Denied." How can she argue that the condition precedent of "rejection" — even if it had not occurred in the past — has not now occurred? Although her "rejection" was neither explicit nor official before, it is both explicit and official now.
Ambro argues that her return of claims, although filed in the Probate Court, was not sent to Goldblatt and therefore fails to meet the requirement of § 45a-360(a)(1) that notice of the rejection be given to the claimant. A party's failure to give notice is a very peculiar argument to be made by that party in support of a claim that a statute of limitation has run against an opponent. Ambro's contention is a bit like the proverbial argument made by a criminal defendant who, having killed his parents, pleads for mercy because he is an orphan. It is Ambro, not Goldblatt, who is responsible for the lack of notice here. It would, of course, be deeply problematic to claim that a statute of limitation began running against Goldblatt if he were not notified of the triggering event. It is not, however, problematic to conclude that Ambro's action satisfies the condition precedent aspect of the statute insofar as it pertains to an action brought against her. She had notice of what she did, and she cannot now claim that there has been no "rejection" of the claim. There has been a "rejection," and that rejection is her own unequivocal action reflected in the revised return of claims. Under these circumstances, her argument that Goldblatt's claim is barred by §45a-363 cannot be sustained.
Ambro's counterclaim must now be considered. She alleges that, "The money held by Attorney Daniels should have been turned over to the Defendant for accounting with the Probate Court." Whatever the status of a hypothetical claim against Daniels — who is not a party here — Ambro's claim against Goldblatt finds no foundation in the record of this case. The Separation Agreement, quoted above, establishes that the money which Child turned over to Daniels was not her property. She CT Page 1325 was, in fact, obliged to turn this money over to Goldblatt for the payment of the debts listed in her financial affidavit. One of those debts was to Goldblatt himself. At least as far as the evidence here indicates, Goldblatt's claim is the only claim listed on Child's financial affidavit that remains unpaid. Under these circumstances, Goldblatt acted properly in applying the money distributed to him by Daniels to Child's debt to him. The money in question was neither Child's property nor part of her estate. It was held in trust not for her benefit but for that of her creditors. Because she was not a beneficiary, the money was not part of her estate. For these reasons, Ambro's counterclaim has not been proved.
Judgment on the complaint shall enter in favor of the plaintiff (Goldblatt) in the amount of $4,017.94.
Judgment on the counterclaim shall enter in favor of the plaintiff (Goldblatt).
Jon C. Blue Judge of the Superior Court